**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRANDY FORSYTH,

                Plaintiff,

vs.                                 Case No.  3:08-cv-1135-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Brandy Forsyth ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claim for disability insurance benefits and

supplemental security income.  Her alleged inability to work is based on the physical

impairments of multiple sclerosis ("MS"), back pain, and headaches.  Transcript of

Administrative Proceedings (Doc. No. 15; "Tr.") at 17, 465; Plaintiff's Memorandum of Law

in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits

(Doc. No. 20; "Pl.'s Mem.") at 4.  On January 31, 2005, Plaintiff filed a claim for disability

insurance benefits and supplemental security income. Tr. at 15; Pl.'s Mem. at 2.  On

September 19, 2007, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff

testified.  Tr. at 455-507.  During the September 19, 2007 hearing, Plaintiff's alleged onset

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 17), and the Order of Reference was entered on March 23, 2009 (Doc. No. 18).

date was amended to January 5, 2005. Tr. at 15, 458; Pl.'s Mem. at 2. On February 27, 2008, the ALJ issued a Decision finding Plaintiff not disabled. Tr. at 15-24. On September 25, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 3-6. On November 25, 2008, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises one issue: "whether the ALJ violated the treating physician rule by ignoring the treating physician completely." Pl.'s Mem. at 1. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ did not address the medical opinion of treating physician Michael J. Vernacchio, D.O. ("Dr. Vernacchio"). Nor was the medical opinion of treating physician Daniel Kantor, M.D. ("Dr. Kantor") addressed.[2] Therefore, the Commissioner's final decision is due to be reversed and remanded for further proceedings.

---

[2] Apparently, the medical records from Dr. Kantor were submitted after the ALJ issued his decision. See Tr. at 6, 15-24. Nonetheless, the medical records from Dr. Kantor were part of the "Medical records from Shands Jacksonville Multiple Sclerosis Center dated February 15, 2008 through July 2, 2008," which were made a part of the record and considered by the Appeals Council. Tr. at 3-4, 6. Plaintiff does not argue that the ALJ erred by failing to address the medical opinion of Dr. Kantor. See generally Pl.'s Mem. Indeed, Dr. Kantor's opinion could not have been considered by the ALJ because the records from Dr. Kantor were not submitted prior to the issuance of the ALJ's Decision. Nevertheless, for the reasons explained herein, on remand the ALJ should address the medical records from Dr. Kantor, as well as Dr. Kantor's medical opinion.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. Tr. at 15-24. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since January 5, 2005 (the amended alleged onset date). Tr. at 17. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "multiple sclerosis, back pain and headaches." Tr. at 17. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 20.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, finding as follows. Tr. at 20. Plaintiff can sit six hours in an eight-hour workday and stand or walk six hours in an eight-hour workday. Tr. at 20. Plaintiff can lift/carry twenty pounds occasionally and ten pounds or less "more frequently." Tr. at 20. Plaintiff can

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

occasionally bend, stoop, crouch, and climb stairs, but she cannot climb scaffolds, ladders, or ropes.  Tr. at 20.  Plaintiff is restricted to working in a temperature-controlled setting without exposure to extreme vibration.  Tr. at 20.  She cannot work at unprotected heights or around dangerous moving machinery.  Tr. at 20.  At step four, the ALJ observed that Plaintiff is able to perform her past relevant work as a mental retardation aide, which was performed by Plaintiff at the light exertional level, and as a nursing assistant, which was performed by Plaintiff at the sedentary exertional level.  Tr. at 23.  The ALJ concluded Plaintiff has not been under a disability from January 5, 2005 through the date of the decision.  Tr. at 24.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)

(internal quotation and citations omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends the ALJ "ignored both the treatment and the opinions" of Dr. Vernacchio, one of Plaintiff's treating physicians. Pl.'s Mem. at 9. At the time of the September 19, 2007 hearing, Dr. Vernacchio was providing general medical care to Plaintiff, and he had referred her to a neurologist for treatment of her MS. Tr. at 243, 474. Subsequent to this referral, Plaintiff was treated by Dr. Kantor, a neurologist at the Shands Comprehensive MS Center. Tr. at 388-401. The medical opinions of Dr. Vernacchio and Dr. Kantor are addressed below.

### A. Dr. Vernacchio

At the time of the hearing before the ALJ, Dr. Vernacchio was a physician with Family Medical and Dental Centers. <u>See</u> Tr. at 157. Plaintiff testified that Dr. Vernacchio was her "family doctor." Tr. at 474. Dr. Vernacchio treated Plaintiff for "coughs and colds"; he was not actively involved in treating Plaintiff's MS symptoms. Tr. at 474. Nevertheless, treatment notes from Family Medical and Dental Centers contain references to MS. Tr. at 151, 156, 159, 160, 243, 244. Although the notes are not entirely clear, Plaintiff apparently received some treatment at Family Medical and Dental Centers for symptoms related to MS. <u>See</u> Tr. at 159 (prescribing Lortab for complaints of muscle pain, muscle spasms, and MS). On

August 16, 2005, Family Medical and Dental Centers referred Plaintiff to a neurologist at Shands because of MS. Tr. at 243.

Dr. Vernacchio evidently believed that his treatment of Plaintiff provided him with a base of knowledge sufficient for him to give a medical opinion as to the severity of Plaintiff's MS because on November 9, 2005, Dr. Vernacchio completed a disability form regarding Plaintiff's MS.[4] Tr. at 157. In the disability form, Dr. Vernacchio stated that Plaintiff had been diagnosed with MS. Tr. at 157. Dr. Vernacchio opined that this condition did not permit work with restrictions, at least "not until managed by neurology." Tr. at 157. Dr. Vernacchio indicated Plaintiff was unable to work and stated, "Extreme Fatigue - pain - possible improvement after managed by neurology," although this depended on whether the "disease goes into remission." Tr. at 157. Dr. Vernacchio found that Plaintiff's condition was permanent, and that she "needs evaluation - treatment by Neuro[logist]." Tr. at 157. Dr. Vernacchio stated that Plaintiff would be seen by a neurologist for a plan of care. Tr. at 157.

The Regulations instruct ALJs how to weigh the medical opinions[5] of treating physicians[6] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

---

[4] The medical opinion expressed on this form is the focus of Plaintiff's argument. See Pl.'s Mem. at 7-11.

[5] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ did not address Dr. Vernacchio's medical opinion or the records from Family Medical and Dental Centers.[7]  Therefore, it is not possible to determine what weight was given to Dr. Vernacchio's medical opinion, if any.  Because Dr. Vernacchio's medical opinion is not discussed at all, there is a possibility it was overlooked.  If it was not overlooked, it apparently was given no weight, and the ALJ failed to articulate any reasons for discounting it.

The Commissioner makes three arguments with respect to the ALJ's failure to address the opinion of Dr. Vernacchio.  First, the Commissioner argues that an opinion from a treating physician stating a claimant is disabled or unable to work is not entitled to controlling weight or special significance because it is an opinion on a matter reserved to the Commissioner.  See Memorandum in Support of Commissioner's Decision (Doc. No. 23; "Deft.'s Mem.") at 4-5 (citing 20 C.F.R. §§ 404. 1527(e), 416.927(e); SSR 96-5p; Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986); Lewis, 125 F.3d at 1440).  Although an ALJ is not required to give such an opinion controlling weight or special significance, opinions from treating physicians cannot simply be ignored.  See 20 C.F.R. §§ 404.1527(b) and (d) and 416.927(b) and (d) (stating that the Commissioner will consider and evaluate every medical opinion).  Because the ALJ did not address Dr. Vernacchio's opinion, it is not possible to determine whether the ALJ even considered it.

Second, the Commissioner contends that Dr. Vernacchio did not provide any medical or laboratory findings to support his opinion, and his opinion is inconsistent with the record

_____

[7]  Most of the records from Family Medical and Dental Centers were submitted prior to the ALJ's Decision.  Tr. at 148-62, 242-49.  However, four pages of documents were submitted to the Appeals Council after the date of the ALJ's Decision.  Tr. at 384-87.

as a whole. Deft.'s Mem. at 5. A review of the evidence reveals that Dr. Vernacchio's medical records contain at least some medical findings; however, because the ALJ did not address Dr. Vernacchio's records, it is not possible to tell whether the ALJ considered them. The law is clear that the ALJ must consider all evidence in the case file when making a determination of disability. 20 C.F.R. § 404.1520(a)(3); see also Sharfarz, 825 F.2d at 279. Although there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ's decision cannot broadly reject evidence in a way that prevents meaningful judicial review. See Dyer, 395 F.3d at 1211. The ALJ's failure to address the medical opinion or medical records of Dr. Vernacchio constitutes such a broad rejection that judicial review is frustrated.

Third, the Commissioner argues that the ALJ discussed the opinions of other physicians that are contrary to the opinion of Dr. Vernacchio: Edward Valenstien, M.D. ("Dr. Valenstein"), a treating physician, Lance I. Chodosh, M.D., an examining physician; and Donald Warren Morford, M.D., a non-examining physician. Deft.'s Mem. at 5-6. However, the fact that the ALJ discussed the opinions of Dr. Valenstein and other physicians does not mean that the opinion of Dr. Vernacchio could be ignored. In addition, as the Commissioner points out, Deft.'s Mem. at 5, on April 1, 2005, Dr. Valenstein indicated that he he "d[id] not see any cause for disability at this point other than her frequent headaches." Tr. at 232 (emphasis added). Because Dr. Valenstein's opinion predates Dr. Vernacchio's November 9, 2005 opinion, it is of questionable value with regard to Plaintiff's subsequent medical treatment.

On remand the ALJ should consider the medical opinion of Dr. Vernacchio and state what weight it is given.  See Sharfarz, 825 F.2d at 279-80.  If the ALJ decides to discount Dr. Vernacchio's medical opinion, adequate reasons supported by substantial evidence should be clearly articulated.  See Lewis, 125 F.3d at 1440.

## B.  Dr. Kantor

After the Family Medical and Dental Centers' August 16, 2005 referral of Plaintiff to a neurologist, Tr. at 243, Plaintiff was seen for a new patient consultation at the Comprehensive MS Program of the Shands Department of Neurology.  Tr. at 219-21.  The new patient neurology consultation occurred on December 1, 2005 and was conducted by Janice L. Daniel, MSN, ARNP.  Tr. at 219-21.  After reviewing Plaintiff's most recent symptoms, Ms. Daniel's impression was that Plaintiff suffered from MS, and further treatment was recommended.  Tr. at 220.  Subsequently, on January 30, 2008, Plaintiff was seen at Shands for "MS followup" by Dr. Kantor, an Assistant Professor in the Department of Neurology and Director of the Comprehensive MS Center.  Tr. at 404-07.  On February 29, 2008, Dr. Kantor observed that Plaintiff suffers from "relapsing-remitting multiple sclerosis." Tr. at 400-02.  On March 17, 2008, Dr. Kantor stated that Plaintiff "should be able to have disability."  Tr. at 396-98.  Dr. Kantor opined that Plaintiff "definitely has an objective physical change, and she cannot engage in any other type of full-time, gainful work."  Tr. at 398.  Dr. Kantor explained that Plaintiff has "a lifetime diagnosis of multiple sclerosis, she has impairment of her motor system, as well as her sensory system, and she also has MS-related fatigue."  Tr. at 398.  On April 29, 2008, Dr. Kantor reiterated this opinion.  Tr. at 392-94.

As noted supra n.2, Plaintiff does not argue that the ALJ erred by failing to address Dr. Kantor's opinion.  See generally Pl.'s Mem.  Indeed, the ALJ could not have addressed it because the records from Dr. Kantor were not in the case file when his Decision was rendered.  Nonetheless, Plaintiff informed the ALJ during the September 19, 2007 hearing that Plaintiff was being treated for MS by Dr. Kantor.  Tr. at 471 (misspelled as "Dr. Candor").  During the hearing, the ALJ required all records to be submitted within the next twenty days.  Tr. at 474-76, 506.  Although it does not appear that the records from Dr. Kantor were submitted within the twenty-day deadline, the Appeals Council received the medical records from Dr. Kantor and made them a part of the record.  Tr. at 6.

"[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1258 (11th Cir. 2007).  Here, the Appeals Council stated, "In looking at your case, we considered . . . the additional evidence on the enclosed Order of Appeals Council," which included the records from Dr. Kantor.  Tr. at 3, 6.  The Appeals Council determined that "this information does not provide a basis for changing the [ALJ]'s decision."  Tr. at 4.  As this Court is required to review new evidence properly presented to the Appeals Council to determine whether that evidence renders the denial of disability benefits erroneous, Ingram, 496 F.3d at 1262, consideration of the records from Dr. Kantor is appropriate.  Therefore, on remand, the ALJ shall also consider the medical opinion of Dr. Kantor and state what weight it is given.  See id. at 1261; Sharfarz, 825 F.2d at 279-80.  If

the ALJ decides to discount Dr. Kantor's medical opinion, adequate reasons supported by substantial evidence should be clearly articulated.  See Lewis, 125 F.3d at 1440.

### V.  Conclusion

The ALJ failed to address the opinion of Dr. Vernacchio.  Without an explanation, it is impossible to determine what weight Dr. Vernacchio's opinion was given, if any.  In addition, because the Appeals Council considered the evidence from Dr. Kantor, this Court is required to consider it as well.  On remand, the ALJ should address the medical opinions of both Dr. Vernacchio and Dr. Kantor.  If either or both of their medical opinions are discounted, adequate reasons supported by substantial evidence should be clearly articulated.  In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions: Reevaluate the evidence with respect to the opinions of and records from Dr. Vernacchio and Dr. Kantor, explicitly stating what weight their respective opinions are given.  If the ALJ decides to discount either or both of their opinions, adequate reasons supported by substantial evidence should be clearly articulated.

2.    The Clerk is directed to close the file.

3.     If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on March 5, 2010.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Counsel of Record